John DACOSTA and N.B. Salty Miller, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 07–807 T.

United States Court of Federal Claims.

July 11, 2008.

**550**

John DaCosta and N.B. Salty Miller, Lihue, Hawaii, each appearing pro se.

Joseph B. Syverson, Attorney of Record, Tax Division, G. Robson Stewart, Reviewer, Court of Federal Claims Section, David Gustafson, Chief, Court of Federal Claims Section, Richard T. Morrison, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

## *OPINION AND ORDER*

GEORGE W. MILLER, Judge.

This action is before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") ("Def.'s Mot. Dismiss," docket entry 4), filed January 16, 2008. On April 16, 2008, plaintiffs filed a response to the motion to dismiss ("Pls.' Response," docket entry 9), and a motion for judgment on the pleadings pursuant to RCFC 12(c) ("Pls.' Mot. Judgment on Pleadings," docket entry 10). Defendant filed a reply in support of its motion to dismiss, which also responded to plaintiffs' motion for judgment on the pleadings, on May 5, 2008 ("Def.'s Reply," docket entry 12).

For the reasons discussed below, defendant's motion to dismiss for lack of subject matter jurisdiction is **GRANTED** and plaintiffs' motion for judgment on the pleadings is **DENIED** as moot.

## *BACKGROUND*

Plaintiffs each filed an Application for Reward for Original Information with the Internal Revenue Service ("IRS") on or about June 2, 2003 (Pls.' Response at 1), by reason of plaintiffs' having provided information to the IRS regarding an alleged violation of internal revenue laws by Margie Geddes ("the Geddes case"). In June 2007, each plaintiff submitted an additional Application for Reward. These applications were reviewed by Robert M. Gardner, a senior program analyst in the IRS Whistleblower Office. Plaintiffs' communication with IRS agents and the Whistleblower Office contin-

ued, and in February of 2008, plaintiffs submitted documents related to the Geddes case to IRS Special Agent Evan Garrett. Def.'s Reply at 5. Plaintiffs allege that to date, the IRS has collected over two million dollars in taxes, penalties and fines in the Geddes case, and plaintiffs anticipate the total yield may ultimately be in excess of fifty million dollars. Pls.' Response at 1.

On March 13, 2007, Mr. DaCosta and Mr. Miller received letters from the IRS stating that each had been selected to receive a reward of $139,321.01 based on their 2003 Applications for Reward, and that checks for that sum would be forthcoming. Complaint, Attachments 2A and 2B. The letter also contained a checkmark next to the statement: "[t]here is a possibility you may receive an additional reward. If so, we will notify you." *Id.* On March 21, 2007, plaintiffs each received payment of $139,321.01. Complaint at 3. Plaintiffs allege that on or around March 1, 2007, a document was submitted by IRS Special Agent Garrett ("Garrett report")[1] "indicating the appropriate amount of reward due [p]laintiffs in the Geddes case," and that "Agent Evan Garrett told [p]laintiffs the appropriate amount of reward was 15 per cent each of the total amount collected by the IRS in the Geddes case." *Id.*[2]

On November 19, 2007, plaintiffs filed their complaint with this court alleging that the amount of the reward received for the information provided with respect to the Geddes case was less than the amount to which they were entitled under the Internal Revenue Code of 1986 ("I.R.C.") and seeking damages in the amount of the difference.[3]

### DISCUSSION

Defendant argues that dismissal is required under RCFC 12(b)(1) because this court is without jurisdiction to hear the present dispute. Plaintiffs are responsible for setting forth a jurisdictional basis for their claims. *See* RCFC 8(a)(1) (the complaint must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends"). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.1997). When deciding a motion to dismiss based on lack of subject matter jurisdiction, the court must construe the undisputed allegations of the complaint in a manner favorable to plaintiffs. The court's task "is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to

---

1. Plaintiffs do not specifically state to whom the report was submitted, but the Court construes plaintiffs' complaint to allege that the report was submitted to someone within the IRS with responsibilities related to whistleblower rewards.

2. The Garrett report was the subject of a motion to compel filed by plaintiffs on April 10, 2008 (docket entry 7). On May 9, 2008, the Court issued an order in which it concluded that plaintiffs' motion to compel was premature and denied it without prejudice to plaintiffs' ability to seek discovery at a later time (docket entry 13). Plaintiffs subsequently filed a motion to strike defendant's response to plaintiffs' request for production of document on May 30, 2008, after the Court had already denied plaintiffs' motion to compel (docket entry 14). Defendant filed a response in opposition to the motion to strike on June 4, 2008 (docket entry 15). The Court concludes that plaintiffs' May 30, 2008 motion to strike is moot in light of the Court's May 9, 2008 order denying the motion to compel without prejudice to its future renewal. In any event, for purposes of resolution of the motion to dismiss, the Court assumes that such a report exists, and that it contains the information described by

plaintiffs in their response to defendant's motion to dismiss, *i.e.,* a statement by Special Agent Garrett that the appropriate amount of the reward to plaintiffs was 15 percent of the total amount collected by the IRS in the Geddes case. Pls.' Response at 3.

3. In their complaint, plaintiffs also sought compensatory damages for claims alleging fraud and negligence by the IRS in handling their reward applications, as well as claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* However, in their response to defendant's motion to dismiss, plaintiffs appear to have abandoned those claims. *Id.* at 5. In any event, the Court lacks jurisdiction over claims sounding in tort, and over RICO claims. *See* 28 U.S.C. § 1491(a)(1) (the Court of Federal Claims has jurisdiction to award "liquidated or unliquidated damages in cases not sounding in tort"); *Garrett v. United States,* 78 Fed.Cl. 668, 671 (2007) (the Court of Federal Claims "has no jurisdiction of claims under RICO").

offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988).

The pleadings of *pro se* litigants are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Even given this considerable leeway, however, *pro se* plaintiffs must still meet the same jurisdictional requirements that all plaintiffs must meet before being allowed to proceed with a claim in this court. *Henke*, 60 F.3d at 799 ("The fact that [the plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). Where defendant challenges a plaintiff's jurisdictional allegations, plaintiff must "establish[ ] subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 748.

In order to establish jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), a plaintiff must identify an express or implied contract, a constitutional provision, a statute, or a regulation that provides a substantive right to money damages against the United States. *See Tippett v. United States*, 185 F.3d 1250, 1254–55 (Fed.Cir.1999). Defendant argues that "[p]laintiffs ... have failed to identify any such contractual relationship, constitutional provision, statute or regulation necessary to invoke this Court's jurisdiction." Def.'s Mot. Dismiss at 3. Plaintiffs argue that they possess a substantive right to money damages by reason of the Government's failure to comply with the provisions of the I.R.C. providing for rewards.[4] Additionally, plaintiffs contend that the Garrett report created a contractual relationship giving rise to a right to money damages in the event of defendant's breach. Pls' Response at 3–5.

## I.  I.R.C. Section 7623: Whistleblower Program

Congress first enacted a whistleblower program in March 1867, pursuant to which the Government was authorized to pay rewards to informants who reported violations of the tax laws.[5] Prior to substantial amendments made to the whistleblower program in 2006, section 7623 of the I.R.C. read:

> The Secretary, under regulations prescribed by the Secretary, is authorized to pay such sums as he deems necessary for—
>
> > (1) detecting underpayments of tax, and
> >
> > (2) detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same, in cases where such expenses are not otherwise provided for by law.
>
> Any amount payable under the preceding sentence shall be paid from the proceeds of amounts (other than interest) collected by reason of the information provided, and any amount so collected shall be available for such payments.

26 U.S.C. § 7623 (2000). In 2006, this section was amended by the Tax Relief and Health Care Act of 2006 ("TRHCA"). Most significantly, the former section 7623 became what is now subsection 7623(a), and new subsections were added, providing for non-discretionary awards in certain circumstances and also providing for whistleblower appeal rights. Pub.L. No. 109–432, Div. A, Title IV, § 406(a), 120 Stat. 2958 (2006). Non-discretionary awards are addressed in subsection 7623(b)(1), which states:

> [i]f the Secretary proceeds with any administrative or judicial action described in subsection (a) based on information

---

4. In their submissions, the parties have referred to the monetary compensation paid to whistleblowers both as a "reward" and as an "award." The Court has principally used "reward" in this Opinion and Order. That term appears to be favored by the IRS in its internal documents and regulations. However, the Court uses "award" when referring specifically to the language that was added to section 7623 in 2006 or when directly quoting from a party's submission.

5. *See* An Act to Amend Existing Laws Relating to Internal Revenue and for Other Purposes, ch. 169 at 7, 14 Stat. 471, 473 (1867). The IRS's historical overview of the program is available on its website at http://www.irs.gov/compliance/article/0,,id=181294,00.html.

brought to the Secretary's attention by an individual, such individual shall, subject to paragraph (2), receive as an award at least 15 percent but not more than 30 percent of the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action (including any related actions) or from any settlement in response to such an action.

26 U.S.C.A. § 7623(b)(1) (West Supp.2008). The TRHCA provided that subsection 7623(b) applied "to information *provided on or after* the date of the enactment of this Act," *i.e.*, December 20, 2006. Pub.L. No. 109–432, Div. A, Title IV, § 406(d), 120 Stat. 2960 (2006), codified as 26 U.S.C.A. § 62, historical and statutory notes (West Supp. 2008) (emphasis added). IRS guidance further provides:

> [i]nformation provided prior to December 20, 2006 (the date of enactment of [TRHCA]) is covered by the law and policies in place at the time the information was submitted. Supplemental information provided on or after December 20, 2006 will not be considered a new claim unless its receipt prompts the Service to take an administrative or judicial action that would not otherwise have been taken on the basis of the earlier-supplied information alone.

I.R.S. Notice 2008–4 ¶ 3.12. Thus, an informant may be entitled to an award under subsection 7623(b)(1) with respect to supplemental information submitted to the IRS after December 20, 2006, upon which the IRS takes administrative or judicial action it would not otherwise have taken. Appeal rights were also added in subsection 7623(b)(4), which provides:

> Appeal of Award Determination—Any determination regarding an award under paragraph (1), (2), or (3) may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter).

26 U.S.C. § 7623(b)(4) (West Supp.2008). This new subsection also applies only with respect to information provided after enactment of the 2006 amendments. *Wolf v. Comm'r of Internal Revenue*, No. 3747–04L, 2007 WL 1556090 (U.S.Tax Ct. May 30, 2007) (statutory provision for judicial review of denial of claim for whistleblower award only applies where claim arises from information supplied after the provision's effective date).

## A. Jurisdiction Based on I.R.C. Subsection 7623(b)(1)

■ Plaintiffs rely on subsection 7623(b)(1) in support of their claim that they are entitled to a monetary reward of no less than 15 percent of the total amount collected by the IRS in connection with the Geddes case. Plaintiffs argue that subsection 7623(b)(1) is applicable because "information was given to the IRS over a six-year period beginning in 2003 and continuing into 2008. The Geddes case is still active and [p]laintiffs are providing the IRS with additional information as of April 14, 2008 as the preponderance of the evidence will support." Pls.' Response at 1 (emphasis added); *see also id.* at 4 ("[e]vidence shows that 7623(b) was in effect when [p]laintiffs provided the IRS with information concerning the Geddes case after December 20, 2006 and the Geddes case is still ongoing.").[6] Defendant, on the other hand, asserts that the information submitted by plaintiffs in their 2007 Applications for Reward is identical to the information submitted in connection with their 2003 applications. Defendant further argues that even if plaintiffs provided new and different information, the IRS took no administrative or judicial action on the basis of the later applications and documentation. Def.'s Reply at 7–8; *see* Declaration of Robert B. Gardner, Senior Program Analyst in the Whistleblower Office, at ¶¶ 5–11 (stating that he reviewed the information submitted by plaintiffs with their 2007 Applications and concluded that

---

6. Plaintiffs also appear to argue that because the notice-of-reward letters were received *after* the enactment of the 2006 amendments, the Geddes case as a whole is covered by subsection 7623(b)(1), and therefore "[p]laintiffs should receive 15% each of all amounts collected in the Geddes case." *Id.* However, the inquiry turns on the date the information is provided by the informant to the IRS, not on the date the IRS notifies an informant that he or she will receive a reward. *See* TRHCA, Div. A, Title IV, § 406(d), 120 Stat. 2960 (2006), codified as 26 U.S.C.A. § 62, historical and statutory notes (West Supp. 2008).

the information was the same information that plaintiffs had submitted to the IRS in 2003, and therefore none of the information submitted with plaintiffs' 2007 Applications has been referred for initiation of an audit or inclusion in an ongoing audit).[7]

The Court concludes that plaintiffs have alleged sufficient facts to avail themselves of subsection 7623(b)(1) for jurisdictional purposes. In the email correspondence attached to plaintiffs' response, there are suggestions that the IRS was receiving and taking action based on information submitted by plaintiffs after the 2006 amendments. For example, in an email to Mr. Gardner dated July 19, 2007, plaintiffs stated that they "have a great deal more evidence in the Geddes case to give to the Jacksonville agents." Pls.' Response, Exh. 26. In an email from Mr. Gardner to plaintiffs dated August 3, 2007, Mr. Gardner stated:

> All your materials will be with our Philadelphia Off Shore Management on Tuesday. I followed up with them Wednesday, they have already begun to do their own research and case building. I would expect that you will be hearing from them very shortly to set up an interview. They are as serious as I am about looking at your material and the players involved.

Pls.' Response, Exh. 20. In light of the leeway granted to *pro se* plaintiffs, and construing the undisputed facts as alleged in the light most favorable to plaintiffs, the Court concludes that plaintiffs have alleged facts that if proved at trial would establish that the IRS acted on information provided by plaintiffs after the 2006 amendments to section 7623. Were plaintiffs to prove that the IRS had taken administrative or judicial action based on such information, and recovered unpaid taxes as a result, plaintiffs would have made out a *prima facie* case that they were entitled to an award pursuant to subsection 7623(b)(1). Thus, the Court is not

persuaded by defendant's arguments that the Court lacks subject matter jurisdiction over plaintiffs' claims based on that provision.

The inquiry, however, does not end there. Defendant argues that even if plaintiffs have alleged sufficient facts to demonstrate a right to an award under subsection 7623(b)(1), "this Court would lack jurisdiction over such claims, because jurisdiction over such claims lies with the Tax Court, not this Court." Def.'s Reply at 9. Defendant bases its argument on the language of I.R.C. § 7623(b)(4), which provides that "[a]ny determination regarding an award under paragraph (1), (2), or (3) may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." Defendant asserts that the legislative history "gives no indication that Congress intended jurisdiction over appeals of award determinations under § 7623(b) to lie with any court other than the Tax Court." Def.'s Reply at 9 (citing Staff of the Joint Comm. On Taxation, 109th Cong., Technical Explanation of H.R. 6408, p. 89 ("The provision [§ 7623(b)(4) ] permits an individual to appeal the amount or denial of an award determination to the United States Tax Court (the 'Tax Court') within 30 days of such determination.")). Finally, defendant points to other jurisdiction-conferring provisions in the I.R.C. similar to subsection 7623(b)(4) which have been held to confer jurisdiction only on the court or courts expressly enumerated in the provision. Def.'s Reply at 9–10.

The Supreme Court analyzed an analogous jurisdiction-conferring provision in *Hinck v. United States,* —— U.S. ——, 127 S.Ct. 2011, 167 L.Ed.2d 888 (2007). The provision at issue in *Hinck* authorized the Treasury Secretary to abate interest accrued on unpaid federal income taxes if the interest assessment was attributable to IRS error or delay. 26 U.S.C. § 6404(e)(1) (2000 & Supp. IV).

---

7. As stated earlier, when plaintiff's allegations relating to jurisdiction are challenged the Court may look beyond the pleadings to determine whether jurisdiction exists. *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991). Where, however, the "jurisdictional issue is intertwined with the merits of the case," there is authority for the proposition that a decision on a

motion to dismiss for lack of jurisdiction "should await a determination of the merits either by the district court on a summary judgment or by the fact finder at the trial." *Kawa v. United States,* 77 Fed.Cl. 294, 303–04, n. 4 (2007) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1340 (3d ed.2004)).

After the interest abatement provision was initially adopted, federal courts uniformly held that the decision not to grant an abatement was not subject to judicial review. *Hinck*, 127 S.Ct. at 2014. In 1996, section 6404 was amended to add the following:

Review of denial of request for abatement of interest.—

(1) In general.—The Tax Court shall have jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate such interest.

26 U.S.C. § 6404(h)(1). The plaintiffs in *Hinck* filed a claim with the IRS, contending that interest assessed was due to the IRS's errors and delays, and therefore should be abated under subsection 6404(h). After the IRS denied the claim, plaintiffs sought review in this court. This court held, and the United States Court of Appeals for the Federal Circuit affirmed, that subsection 6404(h) granted exclusive jurisdiction to the Tax Court, and thus dismissed the case for lack of subject matter jurisdiction. *Hinck v. United States*, 64 Fed.Cl. 71 (2005), *aff'd*, 446 F.3d 1307 (Fed.Cir.2006). A unanimous Supreme Court agreed.

The Supreme Court's reasoning in *Hinck* is applicable to subsection 7623(b)(4). The Supreme Court relied on the principles that "in most contexts, 'a precisely drawn, detailed statute preempts more general remedies,'" and "when Congress enacts a specific

remedy when no remedy was previously recognized, or when previous remedies were 'problematic,' the remedy provided is generally regarded as exclusive." *Hinck*, 127 S.Ct. at 2015. As was the case in *Hinck* with respect to subsection 6404(h), Congress in subsection 7623(b)(4) has "set out a carefully circumscribed, time-limited, plaintiff-specific provision, which also precisely define[s] the appropriate forum." *Id.* at 2016. In addition, like subsection 6404(h), subsection 7623(b)(4) provides for a shorter statute of limitations (*i.e.*, 30 days from an award determination) than the general statute of limitations applicable to actions in the Court of Federal Claims. And, just as Congress enacted subsection 6404(h) against a "backdrop of decisions uniformly rejecting the possibility of any review for taxpayers wishing to challenge the Secretary's § 6404(e)(1) determination," *id.*, here Congress amended section 7623 against a backdrop of caselaw holding that the prior version of section 7623 gave the Secretary discretion to pay or not to pay a reward and therefore did not provide for a substantive right to money damages that would confer jurisdiction upon this court. *See, e.g., Destefano v. United States*, 52 Fed.Cl. 291 (2002); *Confidential Informant v. United States*, 46 Fed.Cl. 1 (2000). Thus, the Supreme Court's rationale for holding that the Tax Court provides the exclusive forum for judicial review of a refusal to abate interest even though the language of subsection 6404(e)(1) is not expressly exclusive, applies with equal force to subsection 7623(b)(4). Accordingly, the Court holds that plaintiffs' claims based upon subsection 7623(b)(1) are within the exclusive jurisdiction of the Tax Court.[8]

---

8. Subsection 7623(b)(4), in addition to vesting jurisdiction in the Tax Court, provides a 30–day time limit on appeals from "[a]ny determination regarding an award under paragraph (1), (2), or (3)...." I.R.C. § 7623(b)(4). Plaintiffs' notice-of-reward letters, sent March 13, 2007, indicated that "[t]here is a possibility you may receive an additional reward." Complaint, Attachment 2A. On October 26, 2007, plaintiffs received email correspondence from the Whistleblower Office stating: "[t]his office has completed a complete review of [the Geddes case] file and can find no reason for the authorization of any further payments. You may consider this as the Service's final answer. You have been told that you may

appeal the Service's decision to the Federal Court of Claims. This office will not respond to any further requests from you regarding the [Geddes] case, except as directed by the Court." Pls.' Response, Exh. 2A. Plaintiffs filed their complaint in this court on November 19, 2007. Complaint at 1. In light of the Court's determination that the Tax Court has exclusive jurisdiction over an appeal from an adverse decision on a claim brought under subsection 7623(b)(1), it is not for this Court to determine whether the email correspondence constituted an "award determination" within the meaning of I.R.C. § 7623(b)(4), nor the effect of the foregoing facts

**B. Jurisdiction Based on I.R.C. Subsection 7623(a) or Based on the Existence of an Implied Contract with the United States**

■ Defendant argues that with respect to information provided before December 20, 2006 [9] (*i.e.,* the 2003 Applications for Reward and accompanying documents), "[t]he prior version of § 7623, provided that the Secretary of the Treasury ('the Secretary') with [sic] discretionary authority to pay sums deemed 'necessary for detecting underpayments of tax,'" and that "neither the prior version of § 7623 nor its implementing regulation, Treas.Reg. § 301.7623–1, provide a substantive right to money damages that would, on their own, confer this Court with jurisdiction under the Tucker Act." Def.'s Mot. Dismiss at 5.

The language of former section 7623, which is now found in subsection 7623(a), has been interpreted to provide for a contractual claim for a reward only when the informant and the Government negotiate and fix a specific amount as the reward; the statute itself is not money-mandating for jurisdictional purposes. *Merrick v. United States,* 846 F.2d 725, 726 (Fed.Cir.1988) ("The United States cannot be contractually bound merely by invoking [section § 7623] and [implementing regulations].... An enforceable contract will arise under these authorities only after the informant and the government negotiate and fix a specific amount as the reward."); *see also Conner v. United States,* 76 Fed.Cl. 86, 87 (2007); *Destefano,* 52 Fed.Cl. at 293; *Confidential Informant,* 46 Fed.Cl. at 5–6.

Defendant correctly states that "[p]laintiffs ... do not allege that they negotiated a specific award amount with the IRS, which it subsequently failed to pay." Def.'s Mot. Dismiss at 5.[10]

Plaintiffs argue that they are entitled to a reward even with respect to information submitted *prior* to the 2006 amendments because the statement of Special Agent Garrett and the Garrett report created an implied contract. Pls.' Response at 3 (stating that an implied contractual relationship arose "in part from Agent Evan Garrett's report."). Defendant responds that the undisputed facts alleged in plaintiffs' complaint, and all inferences drawn therefrom in plaintiffs' favor, are simply insufficient to establish the required contractual relationship based upon the parties' agreement on a specific sum after negotiation or on an implied-in-fact contract theory. The elements of an implied-in-fact contract are: mutuality of intent to contract; consideration; and lack of ambiguity in offer and acceptance. *See City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990). Furthermore, to maintain an implied-in-fact contract claim against the United States, a plaintiff must demonstrate that "the Government representative whose conduct is relied upon [had] actual authority to bind the Government in contract." *Id.* (internal citations omitted).

Defendant first argues that the Garrett report is at most an internal recommendation as to the amount of the reward that plaintiffs should receive, and that "the internal deliber-

on the 30–day time limit set forth in that provision.

**9.** As noted earlier, information provided *before* the 2006 amendments "is covered by the law and policies in place at the time the information was submitted." I.R.S. Notice 2008–4 ¶ 3.12 (emphasis added). Subsection 7623(b)(4), giving exclusive jurisdiction to the Tax Court over appeals from award determinations, did not exist prior to the 2006 amendments, and thus the Court analyzes the arguments with respect to its jurisdiction over claims based on information submitted prior to the effective date of the 2006 amendments separately. On the other hand, appeals from award determinations based on information submitted subsequent to the effective date of the 2006 amendments, fall within the exclusive jurisdiction of the Tax Court. *See* Section I.A., *supra.*

**10.** IRS Publication 733 summarizes the policies of the IRS with respect to reward payments under the former section 7623, now 7623(a). It is well settled, however, that policies described in that publication and the Treasury's implementing regulations do not, without more, give rise to a contractual obligation. *Krug v. United States,* 168 F.3d 1307 (Fed.Cir.1999) (affirming the decision of the Court of Federal Claims granting the Government's motion for summary judgment and holding that IRS Publication 733 and former section 7623 did not themselves give rise to an implied-in-fact contract requiring the IRS to reward the informant for the provision of information that led to the recovery of unpaid taxes from a third party).

ations that [the district director] and his subordinates may undertake in deciding how to exercise this discretion do not affect the unquestioned legal principle that it is left to the delegate's discretion under former § 7623 to decide whether to make an award, and if so in what amount." Def.'s Reply at 14. Defendant next argues that Special Agent Garrett's recommendation or statement regarding the appropriate reward percentage did not constitute a promise to pay such an award, but constituted, at most, Mr. Garrett's assertion as to what he believed plaintiffs ought to receive. *Id.* at 16. Finally, defendant argues that even if Special Agent Garrett's communications with respect to the award amount did constitute a promise to pay plaintiffs a specific amount, Special Agent Garrett did not have actual authority to make such a promise on behalf of the Government. *Id.* (citing the Treasury's regulation implementing former 26 U.S.C. § 7623, Treas.Reg. § 301.7623–1(a), (c), stating that only a district or service center director may approve an award and that "[n]o person is authorized under this section to make any offer, or promise, or otherwise bind a district or service center director with respect to the payment of any reward or the amount of the reward."). Finally, plaintiffs do not contend that any unauthorized statement by Mr. Garrett was ratified by the IRS.

The Court finds that plaintiffs have failed to meet their burden of alleging facts sufficient to establish jurisdiction based on subsection 7623(a), or based on a contract implied in fact, even construing their allegations liberally. As noted above, plaintiffs have not alleged that they negotiated with the IRS and that the parties agreed on and set a specific amount for a reward. Nor have

plaintiffs alleged the essential elements of a contract implied in fact. In that regard, it is clear that Special Agent Garrett did not have authority to bind the Government to a specific reward percentage (Treas.Reg. § 301.7623–1(a), (c)), and his alleged statements and report to the effect that an award of 15 percent would be appropriate were insufficient to create a contract implied in fact to pay a reward in that amount or in any other amount.[11]

## II. Transfer of Case

While it has determined that it does not have jurisdiction, the Court must consider whether it would be appropriate to transfer plaintiffs' claims under subsection 7623(b)(1) as described in Section I.A., *supra*, to the Tax Court pursuant to 28 U.S.C. § 1631. Section 1631 provides: "whenever a civil action is filed in a court as defined in section 610 of this title ... and that court finds there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed." 28 U.S.C. § 1631.

The Court concludes that it "cannot transfer plaintiff[s'] claim to the Tax Court because the Tax Court is not one of the courts to which transfer is permitted by 28 U.S.C. § 610." *Russell v. United States,* 78 Fed.Cl. 281, 290 (2007); *see also Skillo v. United States,* 68 Fed.Cl. 734, 744–47 (2005) (holding that the Court of Federal Claims is without authority to transfer a case to the Tax Court even if it is in the interest of justice to do so and the action could have been brought in the Tax Court, because the Tax Court is not specifically enumerated in section 610).[12]

11. *Abraham v. United States,* 81 Fed.Cl. 178 (2008), also involved a claim for a reward pursuant to I.R.C. § 7623 as it existed prior to the 2006 amendments. In that case, the court held that plaintiff had adequately alleged a claim for breach of an implied-in-fact contract. There, plaintiff alleged that he was advised by an IRS agent that he would be entitled to a reward if he submitted information to the IRS. Plaintiff alleged that, in reliance upon that promise, he subsequently submitted information, constituting an acceptance of the IRS's offer. In that case, the court also concluded that plaintiff alleged sufficient facts to support a claim that the IRS

agent had authority to bind the Government in contract. Here, as noted by defendant, "plaintiffs ... unquestionably provided information to the IRS well before the alleged statement of Agent Garrett upon which they attempt to base implied contract [sic] jurisdiction." Def.'s Reply at 17. Hence, Special Agent Garrett's statement could not have induced plaintiffs to provide information.

12. Section 610 states: "[a]s used in this chapter, the word 'courts' includes the courts of appeals and district courts of the United States, the United States District Court for the District of the

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) is **GRANTED,** and the Clerk is directed to enter judgment dismissing plaintiffs' complaint without prejudice. *See* RCFC 41(b) (dismissal for lack of jurisdiction does not operate as an adjudication on the merits). Plaintiffs' motion for judgment on the pleadings pursuant to RCFC 12(c) is **DENIED** as moot.

**IT IS SO ORDERED.**

Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade." 28 U.S.C. § 610 (2000).